THOMPSON, J.
 

 This is a suit against the maker and an alleged indorser of a note for $3,000, payable to the order of the plaintiff. The note is dated April 27, 1925, and is payable three years and four months after date in monthly installments of $75. The first installment was due on May 27,1925, and the last one on August 25, 1928.
 

 The maker of the note made no defense, and judgment was rendered against him by default.
 

 The alleged indorser denied his signature, and averred that what purported to be his signature on the back of the note was a forgery.
 

 After trial, judgment was rendered against the indorser for the amount of the note, and he has appealed.
 

 In this court an exception of no cause of action has been filed which is levelled at the failure of the petition to allege that a notice of dishonor was given to or that defendant had waived such notice.
 

 The conclusion reached by the court after considering the merits of the case renders it unnecessary to further refer to the exception of no cause of action.
 

 The alleged indorser was placed on the stand by the plaintiff for cross-examination, and testified that he did not write his name on the note, nor did he authorize any one else to do so.
 

 He also made the same statement in his direct and cross-examination as a witness in his own behalf, and further testified that he could not write or sign his name.
 

 
 *44
 
 Several other witnesses were placed on the stand by the plaintiff, but not one of these could or would testify to the signature as being that of the indorser.
 

 None of these witnesses had ever seen the defendant, the appellant, write or sign his name.
 

 It was shown that, when the maker of the note presented the same to the plaintiff, the latter requested the maker to get an indorser. The maker left, and shortly thereafter returned with the name of his father written on the back of the note, and stated that the indorser had placed his name on the note.
 

 The note represented the price of the stock and business of a garage which Russell Oampagna had purchased from the plaintiff.
 

 The maker of the note had also leased the garage from Dr. Meraux. This contract of lease purported to bear the signature of the indorser on the note of plaintiff. The garage business proved a failure, and was closed up.
 

 After default in the-payment of two installments on the note and on the lease, the attorney for the plaintiff and for Dr. Meraux called on the alleged indorser (we shall hereafter'refer to the indorser as the defendant) to see what he was going to do about the lease. The attorney, in testifying concerning this visit, said that he spoke to Mr. Ohmpagna and his wife in the dining room, and that he asked the old gentleman if he knew anything about the transaction, and he stated that he did not; that he said that his name was on the documents, referring to the lease and the note, because Russell had requested him to put it there; that he could not write, and that his wife had written his name for him; that the defendant’s wife was present, and stated that she had signed for her husband. The attorney had the contract of lease with him at the time, but he did not have the note sued on.
 

 It will be observed that the acknowledgment claimed to have been made to the attorney by the defendant and his wife is all the evidence that has any probative effect in establishing the signature of the defendant. It is not pretended that there is any proof whatever, either by persons who saw the defendant indorse the note or who recognized his signature or by comparison of handwriting, other than the admissions testified to by plaintiff’s attorney.
 

 It could hardly be contended that the admission of the wife as to her authority to write her husband’s name on the note was binding on the defendant.
 

 An agent cannot prove his authority by his own declaration.
 

 We have presented, therefore, a case where the plaintiff relies on the acknowledgment of the indorser which is. denied by him, as opposed to the positive denial of the indorser that he had written his name on the note or that he had authorized his wife or any one else to do so and his uncontradicted statement that he could not write.
 

 Article 325 of the Code of Practice pro- . vides that, if the defendant deny his signature in his answer, or contend that the same has been counterfeited, the plaintiff must prove the genuineness of such signature either by witnesses who have seen the defendant sign the act or who declare they know it to be his signature because they have frequently seen him write and sign his name.
 

 The burden of proving the signature when-denied is placed on the plaintiff, and the nature and character of proof exacted is clearly set forth in, the codal article.
 

 As far back as 1836, article 325 of the Code of Practice was held to mean exactly what the
 
 *46
 
 language clearly expressed; that Is, if a party deny his signature to an act or private instrument of writing, or allege it is counterfeited, it must he proved hy witnesses who have seen him sign the act, or know his signature from having frequently seen him write. Plicque & LeBeau v. Labranche, 9 La. 559.
 

 In that case, as in the present case, the son was sued as maker and his father as one of the two indorsers. The father denied that he had indorsed the note, and alleged that his signature was a forgery. In that case, as in this, the plaintiff relied on proof of an acknowledgment of his signature by the alleged indorser.
 

 Justice Martin for the court said:
 

 “In ordinary cases, the acknowledgment of the party is indeed in the nature of evidence of the truth of the signature. But it is the very weakest species of evidence that may be adduced.
 

 “The witness who testifies to the acknowledgment, is placed beyond all danger of being convicted of perjury, and it is almost impossible to contradict him.
 

 “When, therefore, a signature is specially denied by the party to whom it is imputed, that weak species of evidence, of his acknowledgment or admissions, is not allowed.”
 

 The foregoing case was quoted with approval in Huddleston v. Mrs. Coyle, 21 La. Ann. 148.
 

 In Mrs. James v. Widow Rand, 43 La. Ann. 179, 8 So. 623, the court said:
 

 “As, in such case, the primary question is the genuineness of the signature to the note, the defendant having alleged its forgery in a sworn answer, the plaintiff cannot, by offering in evidence, at one and the same time, the note and mortgage, defeat the effect of the defendant’s suborn denial, and impose upon her the burden of proving that her signature to the authentic act of mortgage was a forgery, after same had been filed in evidence.”'
 

 In the case of Watts v. Collier, 140 La. 107, 72 So. 822, 825, the court in concluding its opinion said:
 

 “Our conclusion is that the uncorroborated testimony of only one witness cannot prevail over the denial on oath of the- alleged obligor, to prove that he or she signed the disputed obligation by making a cross mark or by holding or touching the pen with which his or her name was written by some one else.
 

 “To hold otherwise would imply that the requirements of articles 325 of the Code of ¡Practice and 2245 of the Civil Code are entitled to no consideration whatever, and that the defendant’s denial on oath may be disregarded.”
 

 The above pronouncement was by the present Chief Justice at that time associate justice.
 

 On rehearing which reinstated the decree, Chief Justice Monroe in a lengthy opinion concluded with this statement:
 

 “We adhere, therefore, to the view that the testimony of Mr. Bridgeman lacks corroboration, and we conclude that, being both contradicted and uncorroborated, it fails to discharge the burden imposed upon the defendant in injunction of proving the genuineness of the homestead waiver upon which he relies.”
 

 In view of the articles of the Code of Practice and Civil Code referred to and the cases cited, it is perfectly apparent that the testimony of the admission or acknowledgment of the indorser is not sufficient to discharge the burden of proof resting on the plaintiff and cannot prevail against the positive denial under oath of his signature by the defendant.
 

 
 *48
 
 The judgment appealed from is set aside, and the demand against the alleged indorser is rejected at plaintiff’s cost in both courts.
 

 O’NIELL, C. J., absent.
 

 ROGERS, J., dissents.